**IN THE COURT OF APPEALS OF IOWA**

No. 23-0822
Filed August 9, 2023

**IN THE INTERST OF L.L. and L.L.,**
**Minor Children,**

**J.W., Mother,**
      Appellant.
_____

      Appeal from the Iowa District Court for Webster County, Joseph L. Tofilon,

District Associate Judge.


      A mother appeals the termination of her parental rights.  **AFFIRMED.**


      Douglas Cook, Jewell, for appellant mother.

      Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

      Ricki Leigh Osborn Stubbs of Osborn Stubbs Law Office P.C., Fort Dodge,

attorney and guardian ad litem for minor children.


      Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

A mother appeals the termination of her parental rights to her two young children. She claims the juvenile court should have granted a six-month extension for reunification efforts. She also claims that termination is not in the children's best interests. And she contends the court should not have terminated her parental rights due to her close bond with the children. We conclude a six-month extension is unwarranted. Termination is in the children's best interests. And we decline to apply a permissive exception. Accordingly, we affirm.

## I.      Background Facts & Proceedings

This family came to the attention of the Department of Health and Human Services (HHS) in September 2020 because of concerns of substance abuse by the mother and father when the eldest child tested positive for marijuana at birth. Later tests reflected the presence of methamphetamine in both the mother and father. This child was adjudicated in need of assistance in May 2021, and was removed from parental custody in August. The younger child, born in April 2022, was removed from parental custody in July 2022 and adjudicated in need of assistance in September. The juvenile court granted a six-month extension for reunification efforts in regards to the eldest child in July 2022.

Despite the case beginning with concerns about the family's substance abuse, the focus of the case shifted. By the termination hearing, all parties agreed the mother had addressed her substance abuse. But new concerns, mainly domestic violence perpetrated by the father against the mother and the mother's unwillingness to protect her children from that violence, became a focus of the proceedings.

The father assaulted the mother in the fall of 2022, resulting in a no-contact order being put in place in October.  The father was ultimately placed in a halfway house.  Despite the order prohibiting contact between the mother and father, the mother helped organize the father's presence at a semi-supervised visit.  As a result, she was restricted to fully-supervised visits in January 2023.  That did not stop her from continuing to contact the children's father.  Exhibits submitted at the termination hearing show nearly continuous contact between the mother and the father while the father was in jail.  The mother was arrested for violating the no-contact order and spent about a month in jail in April 2023.  The mother minimized the violence and expressed to HHS providers that domestic violence is simply something that every family must address.

The department also had concerns involving the mother's mental health.  The HHS caseworker assigned to the family described the mother's mental health as "an emotional roller coaster."  The provider stated, "When things are rough for her, she struggles with understanding things.  She struggles with just daily life, attending visits, caring for the boys at that time.  And she just struggles with not having any sort of stability when her mental health is not okay."  The mother has done little to address these highlighted concerns, ceasing to attend therapy in January 2023.

A termination hearing was held May 2, 2023.  The mother conceded she could not immediately resume custody of the children and would need another month before she could regain custody.  She expressed her desire to move to Illinois, where she has more family that could act as supports.  The court

terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(h) (2023). The mother now appeals.[1]

## II.    Standard of Review

We review the termination of parental rights de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Our fundamental concern is the best interests of the children. Iowa R. App. P. 6.904(3)(o).

## III.    Best Interests of the Children

The mother claims termination is not in the children's best interests. *See* Iowa Code § 232.116(2). When considering this issue, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.*

We find termination to be in the children's best interests. The mother has consistently chosen to continue her relationship with the father despite the danger he poses to herself and the children. The mother was arrested for violating the no-contact order only about a month before the termination hearing. While she testified at the termination hearing that she would end her relationship with the father, the juvenile court did not find her assertions credible. As the juvenile court described:

> At the hearing, the mother averred that she understood the gravity of the situation and would not allow [the father] around the children in the future. Those words, however, rang hollow and were not credible. [The mother] has shown through her actions that she does not believe that the father poses a danger to her children and that she has no problem with him being around them. Until [the mother] truly has the epiphany that [the father] is dangerous in his

---

[1] The court also terminated the father's parental rights. He does not appeal.

current mental state, she will not be able to protect her children from him.

We defer to the juvenile court's well-supported credibility determination. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The mother has also failed to address her mental health; she stopped attending therapy in January. The HHS caseworker described how the mother could not perform basic tasks when her mental health deteriorates. The children would not be safe in her custody. The mother also conceded that she could not safely resume custody of the children at the time of the hearing. The children are placed in the same foster home and are integrated into this pre-adoptive placement. *See* Iowa Code § 232.116(2)(b). Termination is in the children's best interests.

## IV. Permissive Exception

The mother claims the juvenile court should have declined to terminate her parental rights because of the close bond she shares with the children. *See* Iowa Code § 232.116(3)(c). The exceptions found in section 232.116(3) "are permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). The parent bears the burden of establishing an exception under that section. *Id.* at 476. The parent must demonstrate such with clear and convincing evidence. Iowa Code § 232.113(3)(c).

We, like the juvenile court, decline to apply the exception found in section 232.116(3)(c). There is little evidence of a close bond—both children are very young and have spent most of their lives out of the mother's custody. Moreover, as much as a bond exists, the mother has not met her burden to show that

termination will be detrimental to the children. As described above, the children cannot safely be returned to the mother.

## V.      Six-Month Extension

The mother requests a six-month extension for reunification efforts. A court may grant a six-month extension if it can "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

An extension is unwarranted. The mother already received an extension in July 2022, which extended this case by another ten months. In that time, the father assaulted the mother and a no-contact order was put in place, the mother lost semi-supervised visitation for violating the order, and she subsequently spent about a month in jail for further violating the order. The mother stopped attending therapy in January 2023. In short, the mother has made no progress since the last extension was granted that would suggest additional time would be productive.

**AFFIRMED.**